**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alec Sanchez, | No. CV-23-00200-TUC-RM |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Alec Sanchez ("Sanchez") seeks judicial review of an unfavorable final decision of the Commissioner of Social Security ("Commissioner"). (Docs. 1, 18.) On July 17, 2024, Magistrate Judge Eric J. Markovich issued a Report and Recommendation ("R&R"), recommending that this Court affirm the Commissioner's decision. (Doc. 24.) Sanchez filed an Objection (Doc. 25), to which the Commissioner did not respond.

**I.     Background**[1]

Sanchez filed an application for supplemental security income ("SSI") on November 19, 2020, alleging disability due to asthma, obesity, anxiety, bipolar disorder, schizophrenia, and depression. (AR 220-30, 243). The application was denied initially and on reconsideration, and Sanchez requested a hearing before an Administrative Law Judge ("ALJ"). (AR 79-86, 89-97, 115-16.) ALJ Charles Davis held two hearings, one on December 15, 2021, and another on April 27, 2022. (AR 31-78.) After the hearings, the ALJ issued a decision finding Sanchez not disabled. (AR 15-25.)

---

[1] The R&R sets forth a more detailed summary of the administrative record (Doc. 24 at 2-34), which this Court adopts.

The ALJ followed the five-step sequential evaluation process set forth in the Social Security regulations for determining whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4).[2] At the first step, the ALJ determined that Sanchez had not engaged in substantial gainful activity since the date of his SSI application. (AR 18.) At step two, the ALJ found that Sanchez has the following severe impairments: substance abuse, depression, and anxiety. (*Id.*) The ALJ found that Sanchez's history of substance abuse was not material to the outcome of his SSI application because he reportedly had quit and was on methadone treatment. (*Id.* at 18-19.) The ALJ found that Sanchez's obesity and asthma were non-severe impairments. (*Id.*) The ALJ did not address whether Sanchez's bipolar disorder or schizophrenia were severe impairments. (*See id.*) At step three, the ALJ found that Sanchez does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (*Id.* at 19-21.)

At step four, the ALJ found that Sanchez has no past relevant work and has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following non-exertional limitations: limited to simple, routine tasks with no public contact as part of specified work duties and no high-rate production quota. (*Id.* at 21-23.) In reaching this RFC determination, the ALJ found that, although Sanchez's "medically determinable impairments could reasonably be expected to cause [his] alleged symptoms," Sanchez's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR 22.) The ALJ noted that the record indicated Sanchez had

---

[2] At step one of this process, an ALJ must determine whether a claimant is doing substantial gainful activity; if so, the claimant will be found not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines whether the claimant has a severe medically determinable impairment that meets the duration requirement; if not, the claimant will be found not disabled. *Id.* § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment; if so, the claimant will be found disabled. *Id.* § 416.920(a)(4)(iii). At step four, the ALJ determines whether the claimant can perform past relevant work given his or her residual functional capacity; if so, the claimant will be found not disabled. *Id.* § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can adjust to other work given his or her residual functional capacity, age, education, and work experience; if so, the claimant will be found not disabled. *Id.* § 416.920(a)(4)(v).

a history of treatment for depression and anxiety, but that his "mental status examinations were typically normal," his "recent and remote memory were consistently intact or normal," "he was noted to have an average fund of knowledge," his anger was "lessened by medications," and most treatment records indicated normal concentration and attention span. (*Id.*)  The ALJ found persuasive the opinions of the agency psychological reviewers, psychological consultative examiner Noelle Rohen, Ph.D., and medical expert Betty Borden, Ph.D. (AR 23.)  At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Sanchez can perform given his age, education, work experience, and residual functional capacity, and that he therefore is not disabled. (*Id.* at 24-25.)

In his opening brief, Sanchez argues that the ALJ ignored his statements concerning the effects of his hallucinations and failed to set forth clear and convincing reasons for disregarding his symptom testimony. (Doc. 18 at 2-9.)  Sanchez further argues that the ALJ failed to address portions of Dr. Rohen's opinions. (*Id.* at 9-11.)  Sanchez seeks remand to the Commissioner for reconsideration of the evidence. (*Id.* at 11.)

The R&R finds that the ALJ provided clear and convincing reasons for discounting Sanchez's symptom testimony because: (1) the ALJ accurately characterized Sanchez's testimony regarding his reasons for not working; (2) Sanchez testified that he did not find his auditory hallucinations prohibitive to his ability to work a prior job at Circle K; (3) the ALJ noted specific contradictions with objective medical evidence in evaluating Sanchez's symptoms at step three; and (4) the ALJ appropriately considered that Sanchez's anger improved with medication. (Doc. 24 at 37-40.)  The R&R finds that the ALJ's discussion of Sanchez's activities of daily living does not satisfy the clear and convincing standard, but that the error is harmless given that the ALJ set forth other sufficient reasons for discounting Sanchez's testimony. (*Id.* at 41.)  The R&R also finds that the ALJ properly evaluated Dr. Rohen's opinion and incorporated it into the RFC determination. (*Id.* at 41-43.)

## II. Standard of Review

A district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by a magistrate judge. 28 U.S.C. § 636(b)(1). The district judge must "make a de novo determination of those portions" of the magistrate judge's "report or specified proposed findings or recommendations to which objection is made." *Id.* The advisory committee's notes to Rule 72(b) of the Federal Rules of Civil Procedure state that, "[w]hen no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation" of a magistrate judge. Fed. R. Civ. P. 72(b) advisory committee's note to 1983 addition. *See also Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999) ("If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error."); *Prior v. Ryan*, CV 10-225-TUC-RCC, 2012 WL 1344286, at *1 (D. Ariz. Apr. 18, 2012) (reviewing for clear error unobjected-to portions of Report and Recommendation).

The Court must affirm the Commissioner's decision "if it is supported by substantial evidence and based on the application of correct legal standards." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Thomas v. Barnhart*, 278 F.3d 948, 954 (9th Cir. 2002). It is "more than a mere scintilla, but less than a preponderance." *Id.* In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "weigh both the evidence that supports and the evidence that detracts from the ALJ's factual conclusions." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 523 (9th Cir. 2014) (internal quotation marks omitted). The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted). When evidence "is susceptible to more than one rational interpretation, one of which supports the ALJ's decision," this Court must uphold the

ALJ's conclusion. *Thomas*, 278 F.3d at 954.

Error in a social security determination is subject to harmless-error analysis. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006). An error is harmless if it "was inconsequential to the ultimate nondisability determination." *Id.* at 1055.

**III.    Discussion**

Sanchez argues that the R&R erroneously relies on factors that the ALJ did not discuss, including Sanchez's testimony that he was able to work at Circle K despite hearing voices. (Doc. 25 at 2.) Sanchez also argues that the R&R erroneously finds that the ALJ's step three analysis constitutes clear and convincing reasons to reject Sanchez's symptom testimony at step five. (*Id.* at 3.) Sanchez contends that a failure of objective evidence to support disability at step three cannot alone justify rejecting symptom testimony at step five, because then no individual who is found not disabled at step three could be found disabled at step five. (*Id.*) Sanchez further argues that the ALJ's finding that Sanchez's anger improved with treatment is not a reason to find that any of Sanchez's other symptoms, including his hallucinations and amotivation, are less severe than alleged. (*Id.* at 4.) Finally, Sanchez argues that the ALJ erroneously ignored salient parts of Dr. Rohen's opinion. (*Id.* at 5-6.)

In his function report and administrative hearing testimony, Sanchez stated that he has had auditory and visual hallucinations since childhood, including hearing voices and seeing "shadow people." (AR 62, 252, 258.) He testified that he hears voices constantly, and the voices block out or alter what people say to him. (AR 62.) On more than half of the days preceding the December 2021 administrative hearing, Sanchez had done nothing except lie "there trying to breathe and trying to stop the voices and not—to not see shadows." (AR 65-66.) Sanchez testified that he last worked in 2016, at Circle K, but that he lost the job because he could not focus and had frequent panic attacks that caused him to run to the back of the store. (AR 57-58, 68.) Sanchez's medical records reflect diagnoses of anxiety disorder and severe major depression with psychotic features; there

are also references to schizophrenia and schizoaffective disorder, bipolar type. (*See, e.g.*, AR 319, 321, 591-593, 598, 624-626, 631-632, 651.) He is prescribed olanzapine for his psychosis. (*See, e.g.*, AR 592, 625, 630.)

The ALJ recognized that Sanchez alleges disability due to anxiety, bipolar disorder, schizophrenia, and depression, and the ALJ found that Sanchez's medically determinable impairments could reasonably be expected to cause his alleged symptoms. (AR 21-22.) However, the ALJ never addressed Sanchez's statements concerning the effects of his psychosis. The ALJ erred by limiting his review to certain impairments and ignoring, without explanation, medical evidence of other impairments. *See Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996) (finding ALJ erred by limiting review to certain impairments and ignoring medical evidence of other impairments without explanation).[3]

The error was not harmless. Sanchez's statements concerning the effects of his panic and hallucinations support a finding that he would be absent from work more than twice per month and would require frequent, unauthorized breaks. Vocational experts Ronald Hatakeyama and Gayle Tichauser both testified that an individual would be unable to sustain employment if he was regularly absent twice or more per month, if he took an average of three or more unscheduled breaks per shift, or if he was off task more than 10% of the time. (AR 51-52, 75-77.) Accordingly, Sanchez's statements support a finding that he would be unable to sustain employment.

The R&R notes that Sanchez testified he did not find his auditory hallucinations prohibitive to his ability to work at Circle K. (Doc. 24 at 38.) However, the ALJ did not rely on this testimony in discounting Sanchez's symptom testimony, and this Court may not affirm the ALJ on a ground upon which he did not rely. *See Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (a reviewing court may consider "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely"). Furthermore, Sanchez testified that he lost his job at Circle K

---
[3] The ALJ also entirely failed to address Sanchez's bipolar disorder and schizophrenia in his step two analysis. (*See* AR 18-19.)

- 6 -

due to his mental issues (AR 63), there is no indication the job amounted to substantial gainful employment (*see* Doc. 25 at 2-3), the ALJ did not find the job to constitute past relevant work (AR 23), Sanchez performed the job prior to the relevant time period, and both vocational experts agreed Sanchez would currently be unable to perform the job (AR 50, 74). Even if the ALJ had relied on Sanchez's testimony regarding his ability to work at Circle K despite hearing voices, that testimony does not provide a clear and convincing reason to discount Sanchez's statements that his hallucinations and panic would cause him to require unauthorized absences and breaks with such frequency that it would preclude his ability to sustain employment.

The ALJ's step three findings also do not provide clear and convincing reasons to discount Sanchez's statements concerning the effects of his hallucinations and panic on his ability to work. The ALJ did not specifically address the effects of Sanchez's hallucinations and panic in his step three analysis. (*See* AR 19-21.) Furthermore, even if the ALJ provided clear and convincing reasons to discount Sanchez's symptom testimony when evaluating at step three whether Sanchez's mental impairments meet or medically equal the severity of a listed impairment, the step three analysis does not provide clear and convincing reasons to discount at step five Sanchez's statements indicating that he would require frequent unauthorized absences and breaks from work as a result of his hallucinations and panic.

Finally, the ALJ noted that Sanchez's anger improved with medication (AR 22), but that is not a clear and convincing reason to discount Sanchez's statements concerning his other symptoms, including hallucinations and panic.[4]

The Court also agrees that the ALJ ignored—and therefore, in effect, rejected without explanation—Dr. Rohen's diagnostic impression of unspecified schizophrenia spectrum or other psychotic disorder, as well as Dr. Rohen's opinions that Sanchez's psychosis and anxiety may interfere with his concentration and persistence. (*See* AR 585

---

[4] The R&R finds that the ALJ's discussion of Sanchez's activities of daily living does not provide clear and convincing reasons for discounting Sanchez's symptom testimony. (Doc. 24 at 41.) Neither party has objected to this finding, and the Court adopts it.

- 7 -

(opining that if Sanchez's psychosis "becomes more active under high demand," it "may interfere with his persistence or focus"); AR 587 (Sanchez "was clearly anxious, and anxiety can interfere with concentration and persistence, particularly the longer he is under demand"). An ALJ errs by rejecting a medical opinion "while doing nothing more than ignoring it." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

For the following reasons, the Court will grant Sanchez's Objection to the R&R and remand to the Commissioner for further proceedings consistent with this Order.

**IT IS ORDERED** that Plaintiff Alec Sanchez's Objection (Doc. 25) is **granted**.

**IT IS FURTHER ORDERED** that the Report and Recommendation (Doc. 24) is **partially adopted and partially rejected**, as set forth above.

**IT IS FURTHER ORDERED** that the above-captioned matter is remanded to the Commissioner of Social Security for further administrative proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly and close this case.

Dated this 3rd day of September, 2024.

_____
Honorable Rosemary Márquez
United States District Judge